FILED
2025 Dec-15  AM 09:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **TIBURCIO ACOSTA,** *and* **MARÍA AYALA,** | ) |
| *Plaintiffs,* | ) |
| | ) |
| *v.* | )    **Case Number: _____** |
| | ) |
| **MRS-7 CONSTRUCTION, LLC,** | )    **JURY DEMAND** |
| **HARLIE MOON,** | ) |
| **JESSICA MOON,** | ) |
| **GARNER & ASSOCIATES** | ) |
| **ROOFING & FACILITY** | ) |
| **SERVICES, LLC,** *and* | ) |
| **RYAN GARNER**, | ) |
| *Defendants***.** | ) |

# <u>COMPLAINT</u>

## <u>PARTIES</u>

1.     The plaintiffs, Tiburcio Acosta ("T. Acosta"), and his spouse, María Ayala ("M. Ayala"), jointly referred as **"Plaintiffs"**, file this Complaint against the defendants, MRS-7 Construction, LLC ("MRS-7"), defendant Harlie Moon ("H. Moon"), and defendant Jessica Moon ("J. Moon"), jointly referred as the **"MRS-7 Defendants"**.

1

2.      These Plaintiffs additionally claim against the defendant Garner & Associates Roofing & Facility Services, LLC ("Garner LLC"), and the defendant Ryan Garner ("R. Garner"), jointly referred as the **"Garner Defendants"**.

## GENERAL PRELIMINARY STATEMENTS

3.      Plaintiff T. Acosta was an hourly salaried employee of the MRS-7 Defendants who had <u>exclusively</u> worked for them for over ten (10) continuous consecutive years, and who hereby, for himself and others similarly situated, brings this cause of action against the MRS-7 Defendants pursuant to 29 U.S.C. §211 as his former employer, for the **failure to maintain accurate employment records** as it is required by the Fair Labor Standard Act ("FLSA"); for **record keeping violations** under U.S.C. Title 29 §216(a)(b); and for the multiple and serious violations for their **misclassifications as an independent contractor** under U.S.C. Title 29 §215(a)(3), all of it codified to ensure employers' compliance with these requirements, and which can be penalized by both, civil and criminal sanctions against the non-complying employer related to record keeping violations, failure to keep employment records, and serious and continuous **misclassifications** <u>of hourly salaried employees as</u> **"independent contractors"**, while aiming to deny and avoid all the various responsibilities typically associated for employers, such as the accounting for half of the 15.3% payroll tax for Social Security and Medicare, for the Federal Insurance Contributions Act ("FICA tax"), Federal Unemployment Tax, and aiming to avoid and deny to pay any Workers' Compensation benefits to the on-the-job injured worker, and avoid or deny many other codified employment's benefits such as

ERISA, while failing to establish unpaid retirement contributions as an hourly salaried employee and deny the employee of the protection under the FLSA, and the Family and Medical Leave Act, *inter alia*.

4.     In addition to the claims made under the FLSA against the MRS-7 Defendants for <u>misclassifying employees as independent contractors,</u> the plaintiff T. Acosta and others similarly situated claim under 26 U.S.C. §7434, which provides for the <u>misclassified employees to recover damages for wrongful misclassifications</u> made by an employer, enacted in 1996 as part of the Taxpayer Bill of Rights and **as a tax fraud** statute allowing for costs and damages to the misclassified employee.

5.     Plaintiff T. Acosta, for himself and other similarly situated, also claims against the MRS-7 Defendants for violations of the Equal Rights Under the law pursuant to 42 U.S.C. §1981, which guarantees all persons within the United States jurisdiction the same rights as any citizen for making or enforcing contracts, and other legal proceedings.

6.     Plaintiff T. Acosta brings for himself claims of fraud, deceit, and conspiracy to commit fraud against the MRS-7 Defendants for their failure to have and/or maintain workers' compensation disability insurance which affected him after his serious work-related accident on August 15, 2024, and while working as a salaried worker <u>exclusively</u> working for ten (10) continuous consecutive years for the MRS-7 Defendants.

7.     Plaintiff T. Acosta brings for himself and other similarly situated claims against the MRS-7 Defendants, for fraud on the <u>unlawful misclassifications of their</u>

<u>salaried employees as independent contractors</u>, to avoid not only employment benefits but any workers' compensation benefits to these MRS-7's employees.

8.    Plaintiff T. Acosta brings for himself claims for fraud, for the tort of outrage, for wantonness, and for civil conspiracy to commit fraud against the MRS-7 Defendants, as explained in detail in the claims' *Section "A" below*.

9.    Plaintiff T. Acosta brings claims for the lack of job safety, and for OSHA violations against MRS-7 Defendants and the Garner Defendants, under the **Code of Federal Regulations, 29 CFR §1926.16(c)**, which establishes that both the prime contractor and any subcontractor can have *"joint responsibility"* for the compliance with safety and OSHA standards, as the safety violations were in open view to all the defendants, including the MRS-7 Defendants, and the Garner Defendants, as general contractors, allowing the plaintiff T. Acosta to be working dangerously twenty-five (25) feet high without any fall protection of which these defendants had knowledge that serious injury or death would likely or probably result, and consequently brings claims for negligent, willful, wanton, and reckless failure to provide safety gear, respondeat superior on the general contractor for his negligent, willful, wanton, and reckless failure to stop the work and or provide safety gear, and for intentional infliction of emotional distress to plaintiff T. Acosta, and for the loss of consortium and services to the spouse of the plaintiff T. Acosta.

10.    Plaintiff T. Acosta brings for himself legal claims against the Garner Defendants, as general contractor of the subcontractor MRS-7 Defendants. Alabama under Code §25-5-10, and §25-5-8, is among of the forty-four (44)  states which statutorily regulates on the job injured workers' compensation benefits <u>within the</u>

<u>general contractor relationship</u>  and when the benefits are not paid by the sub-
contractor employer, the general contractor who hired the subcontractor is statutorily
assigned the responsibility to provide all the workers' compensation benefits to the
injured employee of the uninsured employer subcontractor. Additional premium for
these "de jure employee" is charged to the general contractor.

11.    Plaintiff T. Acosta simultaneously brings claims for lack of work safety
against the Garner Contractors for negligence, gross negligence, recklessness,
wantonness, and the breach of duty and standard of care as general contractor.

12.    Plaintiff T. Acosta brings for himself claims against the MRS-7
Defendants under the FLSA, for retaliation, harassment, and deprivation of his
earned benefits, retaliating against him for showing the MRS-7 Defendants acts of
fraud, the misclassifications of hourly salaried workers as "independent contractors",
and their unlawful practices for the violations of the FLSA, codified as 29 U.S.C.
§215(a)(3), and which, as employers, they are prohibited from retaliating against an
employee who properly and legally engaged in "protected activity" under the FLSA,
and under the Alabama Workers' Compensation law.

## <u>JURISDICTION OF THE COURT AND VENUE</u>

13.    Additionally to federal jurisdiction under FLSA and other federal issues,
the Court also holds diversity of jurisdiction under Article III of the U.S Constitution,
§2, 28 U.S.C.A, §1332(a), as there is a complete diversity of citizenship, since each
plaintiff is diverse from every other defendant in this case, and the amount in

controversy exceeds the jurisdictional amount of $75,000.00, exclusive of interest and costs, as follows:

14.    Plaintiff **T. Acosta** is a citizen of the country of Mexico with domicile in Mexico. He is not lawfully admitted for permanent residence in the United States. The serious construction accident he suffered giving rise to this case, occurred in Jefferson County, Alabama, while he was residing in Alabama.

15.    Plaintiff **M. Ayala** is a citizen of the country of Mexico with domicile in Mexico. She is not lawfully admitted for permanent residence in the United States. At the time of the acts and omissions given rise to this case, she was residing in the state of Alabama,

16.    Defendant **MRS-7's** sole place of incorporation at the time of the acts and omissions giving rise to this case is in the state of Alabama with its principal place of business in Alabama. It's two members, H. Moon and Jessica Moon, are U.S. citizens. The corporation MRS-7 is a citizen of the State of Alabama.

17.    Defendant **H. Moon** is a U.S. Citizen domiciled in Alabama. With the information obtained and upon belief, he is a member of MRS-7.

18.    Defendant **J. Moon** is a U.S. Citizen domiciled in Alabama. With the information obtained and upon belief, she is a member of MRS-7.

19.    Defendant **Garner, LLC's** sole place of incorporation at the time of the acts and omissions given rise to this case, is in the state of Alabama, with its principal place of business in Alabama. Garner LLC is a citizen corporation in the State of Alabama. Its only member is R. Garner.

20. Defendant **R. Garner** is a U.S. citizen domiciled in Alabama. With the information obtained and upon belief, he is the only member of Garner's LLC.

21. This Court holds supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) for any Alabama State claims heretofore pleaded or that may arise during the discovery process in this case and that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

22. Venue lies within this district pursuant to 28 U.S.C. §1391. The initial cause of action giving rise to this case occurred in Jefferson County, Alabama.

23. The claims derived of the violations, and fraudulent misrepresentations for the lack of providing workers' compensation to an injured employee are based after the various acts of fraud, deceit, conspiracy to commit fraud, and serious acts of misrepresentation on finding that the Defendant employer MRS-7 did not have any workers' compensation insurance covering their over fifty (50) salaried employees, and by using unlawful and fraudulent tactics, and by signing under oath a false affidavit trying to classify T. Acosta and their other hourly salaried employees as independent contractors in order to avoid legal responsibilities to their employees and deny all employment benefits, not only under federal law, but also to deprive all of their employees of any workers' compensation benefits under Alabama Code §25-5-10 and §25-5-8. The claims for the liability of the general contractor for the subcontractor employee's serious on-the-job accident are legal claims against the Garner Defendants for their inadequate actions, violation of safety regulations,

failure to provide a safety site, improper training oversight, negligent hiring, and OSHA violations under 29 CFR §1926.16(c).

## BIOGRAPHICAL-EMPLOYMENT DATA OF
## EACH OF THE PARTIES IN THIS CASE

24.    **Plaintiff T. Acosta** had been an hourly salaried employee for over ten (10) continuous consecutive years exclusively for the MRS-7 Defendants, and exclusively doing construction-work assigned and directed by them, with the tools and vehicles provided by the MRS-7 Defendants, and receiving hourly plus overtime salaried checks as an employee of MRS-7, when on or about August 15, 2024, he fell twenty-five (25) feet to the concrete ground from an unguarded ladder, in the course of his employment with MRS-7 at the Alabama construction project of the Pinson Valley Highschool ("Project"), which resulted in very serious life threatening injuries, becoming totally disabled after breaking his vertebral column, right and left wrists, injuring his urinary track, and losing his sense of hearing from the said fall. Although MRS-7 employs over fifty (50) salaried workers, it has claimed not carrying workers' compensation insurance and has fraudulently misclassified all his hourly construction workers, of over fifty (50) employees, as **"independent contractors".** These are mostly young people with little schooling and less economic means. The employer, MRS-7 Defendants, have willfully made the misclassifications to avoid paying them any work-related benefits, and avoid providing them with any workers' compensation, despite the very dangerous construction work they are engaged every

day, and which is under the total and exclusive control of the MRS-7 Defendants, together with any of the general contractors hired by the MRS-Defendants for each particular construction project they do.

25.    **Plaintiff M. Ayala** is the spouse of plaintiff T. Acosta of over forty-five (45) years, and who hereto shows a claim for the loss of consortium.

26.    **Defendant MRS-7** continuously employs four (4) crews of unskilled hourly-salaried laborers of over fifty (50) workers, mostly young people of foreign origin, and with limited education. The MRS-7 Defendants perform its construction work using the labor of its salaried employees. This defendant is fully engaged in commerce pursuant to FLSA, 29 U.S.C. §203(s), and who at all the time material hereto, was engaged in commerce within the meaning of the FLSA. The defendant MRS-7 is an enterprise engaged in interstate commerce with annual gross revenues of not less than $500,000, and with employees who handle goods and services moving in interstate commerce.

27.    **Defendant H. Moon** is the owner and general manager of MRS-7, and owns and operates several farms for profit, and some other businesses he purchased recently in cash, and which he operates and manages with his wife, defendant J. Moon.

28.    **Defendant J. Moon** is the wife of defendant H. Moon. She prepares the workers' payroll and issues and signs their payroll checks as hourly plus overtime salaried employees. Defendant J. Moon signed a false affidavit to avoid the legal responsibility to Plaintiff T. Acosta by claiming untruthfully that MRS-7 employs less than five people and falsely misclassifying their hourly salaried workers as

"independent contractors", and particularly on the plaintiff T. Acosta, after he suffered a serious life-threatening work-related accident under the employ of MRS-7 for over ten (10) years as an hourly salaried employee, but MRS-7 **is claiming now that it does not carry Workers' Compensation insurance for any of its more than fifty (50) salaried employees**.

29.    **Defendant Garner, LLC** was the general contractor of the Project, who hired MRS-7 as a subcontractor for the said construction Project where plaintiff T. Acosta was seriously injured on or about August 15, 2025.  Garner LLC failed on its duty to cover for plaintiff T. Acosta while the MRS-7 Defendants did not carry any workers' compensation and failed to correct and establish any deficient safety construction rules and procedures for the safety of the workers on the Project. The defendant Garner LLC is an enterprise engaged in interstate commerce with an annual gross revenue of not less than $500,000, and with several employees who handle goods and services moving in interstate commerce.

30.    **Defendant R. Garner** is the owner and general manager of Garner LLC also having the responsibilities and duties as heretofore stated for his own company, the defendant Garner LLC, but has failed on his duty to do so.

## STATEMENT OF FACTS

31.    Plaintiff T. Acosta was a construction hourly salaried employee who was <u>exclusively</u> working for over ten (10) continuous and consecutive years for MRS-7 Construction, LLC ("MRS-7"), working as an hourly salaried employee with

overtime for MRS-7 which is owned and jointly operated by the defendants Harlie Moon, and Jessica Moon.

32.    At the time of the accident giving rise to this case at the Project on or about August 15, 2024, the plaintiff T. Acosta had been employed as a full-time laborer, working exclusively for the MRS-7 Defendants for over ten (10) continuous consecutive years preceding his accident, while working as an hourly-salaried paid laborer doing roofing and other construction work, controlled and particularly assigned by his employer the MRS-7 Defendants, for which he was paid weekly based on an hourly rate salary with checks from MRS-7, drafted and signed by defendant Jessica Moon as a member of MRS-7 Construction, LLC.

33.    As an hourly employee, the plaintiff T. Acosta, was paid by MRS-7 overtime at one and a half times for his over forty (40) weekly hours. All his payroll checks were drafted and signed by defendant Jessica Moon, who fraudulently signed an affidavit claiming that plaintiff T. Acosta was an independent contractor.

34.    The MRS-7 Defendants exercised full and total control over plaintiff T. Acosta as their employee, who was told and instructed when, where, and how that construction job was to be done, and what was to be done. The MRS-7 Defendants exercised direct and full control over the Plaintiffs and exclusively mandated where their services were to be performed, including how that work was to be done, and the

11

date it was to be performed, while <u>providing all the working tools</u> and the company's vehicle to travel to the Project and for any other prior work projects on behalf of the MRS-7 Defendants.

35.    Plaintiff T. Acosta performed the labor services for his employer MRS-7 in the order and sequence always set exclusively by MRS-7.

36.    Plaintiff T. Acosta's services to MRS-7 were rendered personally and he was paid $16.00 an hour, plus overtime. He was paid weekly, and MRS-7 was aware that Plaintiff was economically dependent on his employer's salary.

37.    Plaintiff T. Acosta was always paid directly from his employer MRS-7 with MRS-7 funds, while in a continuous employer-employee relationship for over the ten (10) exclusive continuous consecutive years preceding his work-accident.

38.    During the over ten (10) continuous year's period as an employee of MRS-7, the plaintiff T. Acosta worked full-time, exclusively for MRS-7, and he did not make his services available to the public, except through his employer MRS-7.

39.    MRS-7, as employer, provided and furnished to both Plaintiffs and to all the other equally situated workers, all the necessary tools, equipment, vehicles, and materials for the jobs assigned and always directed by the MRS-7 Defendants.

40.    Plaintiff T. Acosta neither had any expectations of participating in any profits or losses from MRS-7, nor did he ever receive any of it.

41.    On August 15, 2024, the employer/employee relationship existed between the Defendants and the plaintiff T. Acosta.

42.    On or about August 15, 2024, while the plaintiff T. Acosta was performing his duty as an employer of the MRS-7 Defendants, he suffered a serious accident when he felt down to a concrete floor from the top of a twenty-five (25) feet unprotected platform, breaking the bones of his vertebral column, both hand-wrists, injuring his urinary tract and the loss of his sense of hearing after falling to a hard concrete floor.

43.    The work-records show that the MRS-7 Defendants were at the time employing over fifty (50) laborers, consisting of four (4) crews. On the date of the accident, MRS-7 had two (2) crews at the Project site, one during the daytime which consisted of about 12-14 laborers, and one at nighttime shift which consisted of about 12 to 14 laborers.  Plaintiff T. Acosta had been assigned by MRS-7 to work on the night shift when the accident giving rise to this case occurred, on or about August 15, 2024.

44.    One of the workers from the crew of laborers of MRS-7 working on the construction Project on the night shift, called an ambulance and Plaintiff was sent to the Hospital's ER where he endured several surgeries. MRS-7 Defendants received

prompt and immediate notice of T. Acosta's accident by telephone from one of their employees at the Project

45.    While plaintiff T. Acosta was having surgeries, medical treatments, and therapy for various periods of time, he eventually sought the services of an attorney to redress the issues of his on-the-job injuries. A Worker's Compensation Verified Complaint was filed in the Jefferson County Circuit Court, but it was found that the MRS-7 Defendants do not carry workers' compensation insurance for T. Acosta.

46.    When the accident occurred, plaintiff T. Acosta was sixty-nine (69) years of age with minimal schooling education. He endured several surgeries which MRS-7 was aware of, and as an employee of MRS-7 who was employing more than fifty (50) employees, and while he had exclusively worked for MRS-7 for over ten (10) continuous years, plaintiff T. Acosta had <u>fully and reasonably relied that his employer MRS-7 would provide economic and medical coverage through its workers' compensation insurance</u>, but MRS-7 through the co-defendants H. Moon, and J. Moon, misled the plaintiff T. Acosta by starting giving him for three (3) weeks a $640.00 check and then stopped. That appears to be calculated at about two thirds of the average salary of the Plaintiff as an employee of MRS-7, and while falsely making him believe that MRS-7 workers' compensation insurance would care for everything necessary such as paying the hospital's invoices for his surgeries,

14

following medical care, TTD's checks, and disability, but MRS-7 did not do it. **An Alabama employee has the right to hold a reasonable expectation that his employer will cover his workers' compensation benefits if injured on the job.** T. Acosta had reasonably relied on his employer to provide compensation benefits for his on-the-job accident injuries, as he was a salaried employee of MRS-7, and when defendant H. Moon called pressing him to dismiss his worker's complaint, and T. Acosta refused to do so, H. Moon in retaliation denied any compensation.

47.    Defendant H. Moon refused to cover any medical invoices for surgeries and hospitalization of T. Acosta which were already over $600,000.00. The personal injuries suffered by plaintiff T. Acosta are very serious and resulted in a permanent disability. Plaintiff T. Acosta cannot work any longer in construction, and he does not have any other skills or any other earning capabilities. T. Acosta was not only physically injured, but became mentally ill, suffering severe mental anguish after finding later that his employer's insurance was not providing him the workers' compensation benefits that he was reasonably expecting to receive and which **he is entitled by law,** while he was receiving large medical invoices, followed by collection threats, he became very frightened and is suffering from severe mental depression.

48.    To avoid their own liability to the injured Plaintiff, the MRS-7

Defendants signed under oath an untruthful and fully fraudulent affidavit saying:

> "COMES NOW the Defendant MRS-7 Construction, LLC, by and
>
> through Counsel, and moves the Court as follows:
>
> 1. Defendant, MRS-7 Construction, LLC has less than five (5)
>
> employees.
>
> 2. Thus, Defendant cannot be liable to the Plaintiff under Alabama
>
> Workers Compensation.
>
> 3. That at the time of his injury, Plaintiff was working for a
>
> subcontractor (his son). WHEREFORE, Defendant moves to dismiss the
>
> above-entitled cause."

**To which Plaintiff T. Acosta answered under oath as follows**:

> "1) MRS-7 employs over 40 people.
>
> 2) Plaintiff's son is a young man who works also for MRS-7 as a
>
> laborer, and who cannot even afford an apartment to live, and lives with
>
> Plaintiff.
>
> 3) Defendant Jessica Moon wrote and signed the salary checks to pay
>
> Plaintiff."

49.     It is an intentional fraudulent misrepresentation of material fact from the employer MRS-7 Defendants to make-up a 1099 form for any hourly salaried employee such as plaintiff T. Acosta, and misclassifying employees as independent contractors to deceive the IRS, and to deprive employment's benefits to the worker.

50.     An employer is responsible for covering on-the-job injuries, and the plaintiff T. Acosta had a reasonable expectation that his employer MRS-7 would cover and provide his workers with compensation benefits if injured on the job, and as an employee of MRS-7, he rightfully relied on the workers' compensation system to receive benefits.

51.     The general contractor of the Project where plaintiff T. Acosta was seriously injured in the course of his employment with the MRS-7 Defendants was the defendant Garner & Associates, Roofing & Facility Services LLC whose owner and general manager is Ryan Garner, and who are referred to in this case as the Garner Defendants.

52.     Under the Code of Alabama, the Exclusive Remedy Rule does not preclude a suit against an owner, subcontractor, or general contractor, even when compensation benefits were paid by the insurer for the owner, subcontractor, or general contractor. §25-5-52, 25-5-53 of the Ala. Code 1975.

17

53.    A general contractor, like the Garner Defendants, is also financially responsible for any injuries to the employees of an uninsured subcontractor, and liable in tort for their failure to do so.

54.    In Alabama, a general contractor, like the Garner Defendants, can be held jointly liable for all workers' compensation benefits if an employee of the subcontractor is injured on the project, thus the Garner Defendants are jointly and financially liable with the MRS-7 Defendants for plaintiff T. Acosta's workers' compensation benefits.

55.    Alabama law allows what it is called a "principal employer", such as the Garner Defendants as general contractors to be held responsible for the workers' compensation obligations of a subcontractor if the subcontractor does not have their own coverage. The MRS-7 Defendants claim that they do not have any Workers' Compensation insurance for any of their over fifty (50) workers, and they have failed to pay workers' compensation benefits to Plaintiff T. Acosta.

56.    The MRS-7 Defendants are admitting that **they do not have, and never had, any workers' compensation insurance for any of their over fifty salaried employees** who are exclusively working every day on their for-profit construction projects, which are exclusively directed and controlled by the MRS-7 Defendants.

57.    The statute under Alabama Code §25-5-8 shows that if a subcontractor fails to carry workers' compensation insurance, the general contractor will be held responsible for covering the injured employee. This is a mandatory coverage, where the law treats the subcontractor's employees as if the general subcontractor employed them. If an employee of an insured subcontractor is injured on the job, he can take legal action, separated from a worker's compensation claim, to recover all benefits, and any penalties allowed by law, from the general contractor.

## Section A

### PLAINTIFF TIBURCIO ACOSTA LEGAL CLAIMS AGAINST THE MRS-7 DEFENDANTS

### I.    FAIR LABOR STANDARD ACT VIOLATIONS TITLE 29, SECTION 215 OF THE U.S. CODE, *ET AL*

58.    Plaintiff T. Acosta re-alleges and incorporates by reference herein all the allegations in paragraphs 1 to 57 above, and heretofore pleads alternatively under Rule 8(d) of Federal Rules of Civil Procedure ("FRCP"), and further states:

59.    Plaintiff T. Acosta for himself and other similarly situated brings this cause of action against the MRS-7 Defendants, as "Statutory employer", pursuant to 29 U.S.C. §211 of the Fair Labor Standard Act ("FLSA") to their failure to maintain accurate employee records, and under U.S.C. Title 29 §216 (a)(b) for record keeping

violations, and U.S.C. Title 29 §215 (a)(3) for misclassification as an independent

contractor, all of it codified to ensure employer compliance with these requirements,

while providing both civil and criminal sanctions against the non-complying

employer, on record keeping violations, failure to keep employment records,

misclassifications as "independent contractor" to avoid payment of workers'

compensation benefits to the injured worker and other employment benefits such as

ERISA, failing to establish unpaid retirement contributions as an hourly salaried

employee for a continuous and consecutive ten (10) years of service as an employee

of the MRS-7 Defendants, and for ten (10) years the continuous record keeping

violations, with misclassification as an "independent contractor" (when he was an

hourly salaried employee with paid overtime), and denied all other employment

benefits, like workers' compensation which they denied to him after suffering a

serious job related accident, and to deprive him of other employment's benefits, such

as the Employee Retirement Income Security Act ("ERISA") while failing to

establish unpaid retirement contributions as an hourly salaried employee, Family

Leave Act ("FMLA") which provides an employee with job protected leave for

specific family and medical reasons.

60. The misclassification done by the MRS-7 Defendants affected plaintiff

T. Acosta, and other similarly situated on lack of benefits typically offered to all

employees, including workers' compensation, healthcare insurance, family and medical leave, and unemployment.

61.    The "economic realty test" is that plaintiff T. Acosta was an hourly salaried employee paid weekly, the MRS-7 Defendants exerted full control over his work, they provided all the tools, and equipment, including transportation vehicle to the construction work project, and the fact that plaintiff T. Acosta had no opportunity of any type for share of profit or loss.

62.    Plaintiff T. Acosta claims compensatory damages, liquidated damages, punitive damages, and attorney's fees covering the misclassified worker's legal costs.

## II.    RACE DISCRIMINATION ON FRINGE BENEFITS UNDER 42 U.S.C., §1981

63.    Plaintiff T. Acosta re-alleges and incorporates by reference herein all the allegations contained in paragraphs 1 to 57, above, pleads alternatively here under FRCP 8(d), and further states:

64.    Plaintiff T. Acosta is of Hispanic origin, and as such, he has been denied benefits by his employers the MRS-7 Defendants, on account of race and/or national origin, in total violation of the Equal Rights Under the Law, pursuant to 42 U.S.C. Section 1981.

65.    The plaintiff T. Acosta during the ten (10) years working for MRS-7 was never provided any fringe benefits of any type, although the non-Hispanic employees received fringe benefits including vacation and severance pay.

66.    Plaintiff T. Acosta is entitled to recover the lost backpay during all the time he worked for the MRS-7 Defendants, for ten (10) consecutive years, and he is entitled to receive compensatory damages, uncapped punitive damages, attorney's fees and costs. In general, plaintiff T, Acosta claims additionally any compensatory damages allowed by law and/or equity principles.

### III.    INTENTIONAL FRAUD OR FRAUDULENT MISREPRESENTATION, FRAUDULENT DECEIT, AND CONCEALMENT

67.    Plaintiff T. Acosta re-alleges and incorporates by reference herein all the allegations contained in paragraphs 1 to 57 above, and heretofore pleads alternatively under FRCP 8(d), and further states:

68.    Plaintiff claims against the MRS-7 Defendants, that is, against MRS-7 Jessica Moon, and Charlie Moon, jointly and severally as follows in this count of Intentional Fraudulent Misrepresentation, Fraudulent Deceit, and Concealment, under *Ala. Code 1975* §6-5-103, and §6-5-104. *et seq.*

22

69.    The accident suffered by Plaintiff is clearly compensable under the Alabama Workmen's Compensation Act, because: 1) it arises and resulted with serious injuries out of the employment with defendant MRS-7; and 2) it occurred in the course of his employment with the defendant MRS-7. The phrase *'in the course of his employment'* refers to the time, place, and the circumstances under which the accident giving rise to this case took place.

70.    In Alabama, an employer's fraudulent misrepresentation regarding workers' compensation claim, including employee's status, such as misclassification as independent contractors, can lead to legal action beyond the standard for workers' compensation benefits, as the Alabama Supreme Court has ruled that such claims, supported by "clear and convincing proof," **are not barred by the exclusivity provision of the workers' compensation.**

71.    In Alabama, lying or misleading to avoid paying workers' compensation benefits by falsely claiming the injured person was not their employee, as in the case at bar, is treated as workers' compensation fraud.

72.    Under Alabama law, the workers' compensation exclusivity provision does not apply to intentional fraud committed by an employer, and in such cases the employee is allowed to pursue claims beyond workers' compensation benefits, as is in the case at bar.

### *LEGAL STANDARD ON AN EMPLOYER'S FRAUDULENT MISREPRESENTATION FOR THE MISCLASSIFICATION OF ITS EMPLOYEES AS "INDEPENDENT CONTRACTORS":*

73.    The Alabama Supreme Court has held and cited in numerous decisions that an employer's fraudulent misrepresentations regarding an employee's workers' compensation claim, if supported by "clear and convincing proof," are not barred by the exclusivity provisions of the Alabama Workers' Compensation Act, **thus, allowing legal tort actions against the employer**. *See Lowman v. Piedmont Exec. Shirt Mfg. Co., and Carol Hart,* 547 So. 2d 90 (Ala. 1989), where the Supreme Court explained its decision saying that the employee's claims in *Lowman's* case "were predicated, not on her workplace injury itself, **but rather on the employer's actions following the employee's workplace injury**." 202 So. 3d at 674. As in the case.

74.    On October 18, 2019, the Alabama Court of Civil Appeals issued the same opinion in *Swain v. AIG Claims, Inc.,* 2019 WL 5284748, at *10 (Ala. Civ. App. 2019), and after the trial court erroneously dismissed Swain's claims, the Court of Civil Appeals reversed the trial court holding **that the plaintiff's claims for outrage, fraud or conspiracy to commit fraud, were properly based on the handling of his worker's compensation claim, and thus, they were not barred by the exclusivity remedy provisions of Ala. Code 1975, §25-5-5**, while stating to be **valid claims**. In the appeal brief, the Alabama Court of Civil Appeals held that

neither Ala. Code §25-5-77(a) nor the exclusive remedy provisions Ala. Code §25-5-53 prevented plaintiff from asserting tort claims for outrage, fraud, and conspiracy. The following cited cases show that the claims made by T. Acosta are not barred by the exclusive remedy provisions of the Alabama workers' compensation law, as follows: *Id* at 5 (citing *Lowman v. Piedmont Executive Shirt Manufacturing Co.*, 547 So. 2d 90, 95 (Ala. 1989)). See also, *Soti v. Lowe's Home Centers., Inc.*,906 So. 2d 916, 919 (Ala. 2005) (citing *Lowman*); See also *e.g., ITT Specialty Risk Services, Inc. v. Barr,* 842 So. 2d 638, 646 (Ala. 2002) (quoting *Hobbs, Inc. v. Alabama Power Co.*, 775 So. 2d 783, 786 (Ala. 2000), quoting *Lowman,* 547 So. 2d at 95).

75.    The **Reasonable Reliance by Plaintiff T. Acosta**:

In Alabama, the workers typically and reasonably, rely on their employers' workers' compensation insurance to cover on-the-job injuries, as such insurance provides a no-fault system for medical expenses and lost wages. This reliance stems from the fact that the Alabama Workers' Compensation Act generally makes the employer's workers' compensation insurance the exclusive remedy for most on-the-job injuries, limiting the employee's ability to sue his employer for damages beyond those provided by his employer's insurance.

Plaintiff T. Acosta had a reasonable reliance to receive from his employer, the MRS-7 Defendants, workers' compensation benefits.

**Intentional fraud/or fraudulent misrepresentation" by the MRS-7 Defendants:**

76.    Under Alabama law, it creates a willful deception with the intention to induce someone to alter his position to his detriment, injury, or risk. An employee like T. Acosta has a reasonable expectation that his employer will cover his workers' compensation benefits if injured on the job. The MRS-7 Defendants are liable to plaintiff T. Acosta for damages, and penalties under the governing law, such as compensatory, and punitive damages.

77.    The MRS-7 Defendants treated plaintiff T. Acosta as an  hourly salaried employee with on the job injury benefits, who had been working exclusively and continuously for them under their exclusive control for over ten (10) continuous and consecutive years, and were always paying him an hourly salary plus overtime, and they were furnishing the working tools for every job, but the MRS-7 Defendants have intentionally defrauded him as they had no intention to provide the benefits granted by the Alabama Workers' Compensation Act.

78.    The elements of intentional fraud or fraudulent representation are: **1)** false representation, **2)** knowledge of falsity, **3)** intent to deceive, **4)** reliance, and **5)** injury. In the case at bar**, 1)** the MRS-7 Defendants made a false statement or misrepresentation of a material fact to plaintiff T. Acosta, **2)** the MRS-7 Defendants

knew it was false or made it recklessly without regard to its truth or falsity, **3)** the MRS-7 Defendants made the representation with the intent to induce him to act or refrain him from acting, **4)** The plaintiff T. Acosta is a laborer who totally relied on the false representation by his employer, who was employing him during ten (10) years until his accident, and believed that his employer would look  and care for his best interest and welfare after suffering such traumatic accident while he was rendering as an employee  construction services to the MRS-7 Defendants. Because of all this: **5)** T. Acosta suffered severe mental anguish, pain, and damage because of his reliance on the false representation of the MRS-7 Defendants. The MRS-7 Defendants are liable for compensatory and punitive damages.

79.    The **"<u>Fraudulent Deceit</u>"** perpetrated by the MRS-7 Defendants is a willful misrepresentation or concealment of a material fact with the intent to induce another person to act, and that person's subsequent action to his injury or risk.  The plaintiff T. Acosta, as an employee of MRS-7, may reasonably assume that his employer will handle filing and processing his workers' compensation claim, and that the employer's insurance company will cover the medical invoices, lost wages, and disability benefits. The MRS-7 Defendants committed fraudulent deceit and are liable for compensatory and punitive damages.

80.     There is a subtle difference in the legal context of **"fraud"** and "**deceit**" although they are often used interchangeably. "Intentional fraud" refers to the active misrepresentation of a material fact with the intent to deceive which causes harm, while "Fraudulent deceit" encompasses both intentional misrepresentation and the suppression of a material fact when there is a duty to disclose. MRS-7 Defendants have engaged in both intentional fraud and fraudulent deceit, and they are liable to the Plaintiff for compensatory and punitive damages.

81.     The **<u>"Concealment"</u>** made by the MRS-7 Defendants constitutes an intentional suppression of the factual truth, by someone who knows or believes is not true, and has a duty to disclose the factual truth, and for such concealment he can be liable for damages. The MRS-7 Defendants had *ab initio*, no intention to provide to the plaintiff T. Acosta, any of the workers' compensation benefits that he is entitled to under the Alabama Workers' Compensation Act. The MRS-7 Defendants are held jointly and severally liable to this Plaintiff for each of their acts of concealment committed against him. Plaintiff T. Acosta claims compensatory and punitive damages against the MRS-7 Defendants, jointly and severally.

82.     The unequivocal intentional tortious conduct by the MRS-7 Defendants jointly and severally, claimed by plaintiff T. Acosta is intentional fraud, and because

of the strong evidence presented by this Plaintiff, if accepted and believed by a jury, would fully qualify as clear and convincing proof of intentional fraud.

83.    Plaintiff claims against the MRS-7 Defendants, jointly and severally, compensatory, and punitive damages, plus costs.

## IV.    <u>TORT OF OUTRAGE / INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

84.    Plaintiff T. Acosta re-alleges and incorporates by reference herein all the Allegations contained in paragraphs 1 to 57 above, and heretofore pleads alternatively under FRCP 8(d), and further states:

85.    Plaintiff T. Acosta claims liability against the Defendants, MRS-7, Jessica Moon, and Harlie Moon, jointly and severally for all their outrageous conduct perpetrated which resulted in the infliction of severe emotional distress to the Plaintiff.

86.    The tort of outrage is rooted in common law, and applied in Alabama based on judicial precedent decisions, and there is no specific governing statute.

87.    The elements of the tort of outrage are 1) The defendant's conduct was extreme and outrageous. 2) The defendant either intended to cause or recklessly disregarded the risk of causing emotional distress. 3) The Plaintiff suffered severe

emotional distress as a result.

88.    The outrageous actions of the MRS-7 Defendants against plaintiff T.

Acosta are *"so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society"*, as outlined by the court in *American Road Service Co. v. Inmon*, 394 So. 2d at 365 (Ala. 1980), the Supreme Court adopted the "tort of outrageous conduct" defined in the *Restatement (Second) of Torts*, §46 (1948), and in case law decisions. *Nabors v. St Paul Ins. Co.*, 489 So. 2d 573 (Ala. 1986).

89.    The plaintiff T. Acosta has presented sufficient facts and documented evidence showing that the MRS-7 Defendants, jointly and severally, committed extreme and outrageous acts of deceit and wrongful conduct by intentionally or recklessly, mislead facts and gave false testimony under oath, while intentionally seeking to deprive this Plaintiff of the benefits he is entitled to by law, and which he needed for his own survival after suffering several serious on the job injuries, while breaking his vertebral column, breaking both hand wrists, injuring his urinary tract, and losing his sense of hearing from the fall after he fell twenty-five (25) feet high from an unsecured ladder to a concrete floor. Plaintiff T. Acosta suffered severe emotional distress because of the MRS-7 Defendants' wrongful conduct, jointly and severally.

90.    It is evident that the conduct by the MRS-7 Defendants is outrageous in character and extreme in degree, while the plaintiff T. Acosta's emotional distress for being unable to pay for any medical care in the past and future, knowing that he will not being able to work anymore, and much less in the construction work he was doing before his accident.  The MRS-7 Defendants' conduct of giving entirely false testimony under oath to deprive this Plaintiff of his benefits, is beyond any bounds of decency, and it is intolerable in a civilized society finding that the MRS-7 Defendants' actions are atrocious and most outrageous under any known bounds of decency.

91.    Plaintiff T. Acosta is of advanced age, and seriously injured for the rest of his life, with no other source of income to sustain himself and his wife, and thus, it shows sufficient evidence supporting outrageous conduct from the MRS-7 Defendants placed in a superior position to exercise it. "The extreme and outrageous character of the conduct that may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." *Restatement 2nd of Torts* §46 (1965).

92.    Additionally, the extreme and outrageous character of the conduct by the MRS-7 Defendants may arise equally from the actor's knowledge that plaintiff T. Acosta is peculiarly susceptible to suffering emotional distress by reason of some

physical or mental condition or peculiarity. The situation is clear, a seventy (70) year-old man, with minimal schooling, seriously injured for life with no ability to work anymore but receiving threatening medical collection letters for thousands of dollars.

93.    Plaintiff T. Acosta hereby claims against the MRS-7 Defendants, jointly and severally, compensatory, and punitive damages for his emotional distress, suffered and for his pain and suffering, and claims any other damage allowed by law or any equitable principles.

## V.    WANTONNESS

94.    Plaintiff T. Acosta re-alleges and incorporates by reference herein all the allegation contained in paragraphs 1 to 57 above, and heretofore pleads alternatively under FRCP 8(d), and further states:

95.    Under *Alabama Code*, §6-11-20(b)(3), a conduct is wanton when "carried on with reckless or conscious disregard of the rights or safety of others."

96.    To prove the tort of wantonness, a plaintiff must show evidence of "the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250,

1256 (Ala. 1998).

97.    The MRS-7 Defendants were always fully aware that they have the duty to provide the worker's compensation benefits to their employee T. Acosta, after an on-the-job injury of which the MRS-7 Defendants were given immediate notice, and they held notice and knowledge that the plaintiff T. Acosta was seriously injured, but instead, they fraudulently tried to make false claims by saying he was an independent contractor, despite the fact of being working for the MRS-7 Defendants as a salaried employee for over ten (10) consecutive continuous years, as they were trying to avoid their statutory responsibility, while knowing well that their actions will cause further physical and mental injuries to Plaintiff.

98.    Plaintiff T. Acosta demands compensatory and punitive damages against The MRS-7 Defendants, jointly and severally, and any other damages allowed by equitable principles, or the Court.


## VI.    CIVIL CONSPIRACY TO COMMIT FRAUD

99.    Plaintiff T. Acosta re-alleges and incorporates by reference herein all the allegations contained in paragraphs 1 to 57 above, and heretofore pleads alternatively under FRCP 8(d), and further states:

100.    Plaintiff T. Acosta has underlined causes of action against the MRS-7 Defendants, jointly and severally, and therefore, claims civil conspiracy to commit fraud against defendant Jessica Moon, and Harlie Moon, jointly and severally.

101.    Plaintiff can maintain a legal cause of action, jointly and severally, against the defendants' conspirators. "Alabama recognizes civil conspiracy as a substantive tort" *DGB, LLC v. Hinds*, 55 So. 3d 218, 234 (Ala. 2010). "Civil conspiracy is an agreement between two or more people to do something unlawful, or something lawful by unlawful means." *Purcell Co. v. Spriggs Enter., Inc.,* 431 So. 2d 515, 522 (1983). *Luck v. Primus Auto. Fin. Serves., Inc.,* 763 So. 2d 243, 247 (Ala. 2000). "The gist of an action alleging civil conspiracy is not the conspiracy itself but, rather, the wrong committed." *Hooper v. Columbus Reg'l Healthcare Sys., Inc.* 956 So. 2d 1135, 1141 (Ala. 2006).

102.    Defendant Jessica Moon and defendant Harlie Moon agreed to engage in an activity to accomplish an unlawful purpose or goal, with an injury to the Plaintiff because of it.

103.    Defendants Harlie Moon and Jessica Moon conspired to wrong the plaintiff T. Acosta by depriving him of his worker's compensation benefits, which constitutes an unlawful purpose by which this Plaintiff has suffered further injuries, unlawful economic deprivation, and severe mental distress.

104.   The Alabama Pattern Jury Instruction 43.02 states: *"Any defendant who participates in a civil conspiracy is liable for the damages sustained by the plaintiff because of the conspiracy"*.

105.   Plaintiff T. Acosta demands compensatory and punitive damages against Defendants Harlie Moon and Jessica Moon, jointly and severally.

### ***Plaintiff Tiburcio Acosta claims damages against the MRS-7 Defendants***

106.   Plaintiff T. Acosta demands damages against all the MRS-7 Defendants jointly and severally as follows:

**a)**   A lump sum monetary compensation for total disability, including loss of wages, medical and hospital invoices, loss of earning capacity, future medical invoices, and living expenses.

**b)**   All compensatory damages, punitive damages, and costs granted by a jury, for each tort claim of fraud, tort of outrage, wantonness, and civil conspiracy to commit fraud,

**c)**   Compensatory and punitive damages for the FLSA's claims, ERISA's claims, and the Equal Rights Under the Law claims, stated through this Complaint.

## Section B

### PLAINTIFF TIBURCIO ACOSTA CLAIMS AGAINST THE GARNER DEFENDANTS AS GENERAL CONTACTORS OF THE PROJECT

**VII.** **UNDER ALABAMA CODE §25-5-10 THE GENERAL CONTRACTOR HAS A DUTY TO ENSURE THAT ITS SUBCONTRACTORS CARRY WORKERS' COMPENSATION, AND THE GENERAL CONTRACTOR WILL BE LIABLE FOR BENEFITS IF THE SUBCONTRACTOR FAILS TO DO SO, AND UNDER ALABAMA CODE §25-5-8 AS PER THE GENERAL CONTRACTOR'S STATUS AS A "STATUTORY EMPLOYER"**

107.    Plaintiff T. Acosta re-alleges and incorporates by reference all the above allegations contained in paragraphs 1 to 57, supra, and heretofore alternatively pleads under FRCP 8(d), and further states:

108.    Alabama Code §25-5-10 establishes that a general contractor who subcontracts work "to avoid liability" to workers under the Workers' Compensation Chapter is legally responsible for paying compensation to any injured employee of the subcontractor.

109.    After the defendant MRS-7 admitted having no workers' compensation it is now found that the General Contractor for the Pinson Valley High School project ("Project") where plaintiff T. Acosta was seriously injured, is the defendant Garner & Associates, Roofing & Facility Services, LLC ("Garner, LLC"), with its owner and general manager, defendant Ryan Garner.

36

110.    Garner LLC, as the general contractor for the Project, hired MRS-7 as a subcontractor who provided for the job its employees laborers, which included plaintiff T. Acosta, and plaintiff M. Acosta.

111.    While under employment with the MRS-7 Defendants, the plaintiff T. Acosta sustained a serious work accident which is fully compensable by the Alabama Workers' Compensation law.

112.    Under Alabama Code §25-5-8, if a subcontractor who does not have workers' compensation insurance hires an employee, the general contractor is considered the **"statutory employer"** of that worker and in this capacity, the general contractor becomes responsible for providing workers' compensation benefits to the injured employee.

113.    In Alabama, the Exclusive Remedy Rule does not preclude a lawsuit in tort against a general contractor, even in a case where the compensation benefits were paid by the insurer for the subcontractor or general contractor. Ala. Code §25-5-51, 25-5-53.

114.    In Alabama, a construction employer with five or more employees is required by law to provide workers' compensation coverage, including full-time, part-time, seasonal workers, and temporary workers, and the law allows a general

contractor to be held responsible for the workers' compensation obligations of a subcontractor if the subcontractor does not have their own coverage.

115.    Failing to comply with coverage can lead to the general contractor like Garner LLC facing legal action directly from the subcontractor's injured worker as well as fines and penalties for non-compliance with workers' compensation laws.

116.    The seriously injured plaintiff T. Acosta is a man of advance age, with minimum schooling. Plaintiff became totally disable after breaking his vertebral column, bot right and left-hand wrists, injuring his urinary track, and loss of his sense of hearing after twenty-five (25) feet fall at the construction Project on or about August 15, 2024.

117.    Alabama law has for long time legislated and applied the legal concept that the ***Exclusive Remedy Rule*** does not preclude a lawsuit in tort against an owner, or against a subcontractor, or against the general contractor, making them responsible for the full payment of the workers' compensation benefits to the injured worker.

118.    Plaintiff T. Acosta demands full compensatory workers compensation benefits under Alabama Code §25-5-10, and Alabama Code §25-5-57, and for any other damages allowed by law and/or equity principles.

## VIII.  NEGLIGENCE

119.    Plaintiff T. Acosta re-alleges and incorporates by reference herein all the allegations contained in paragraphs 1 to 57 above, and heretofore pleads alternatively under FRCP 8(d), and further states:

120.    The Garner Defendants, jointly and severally, failed to act with the care that a reasonable person would exercise under similar situations or circumstances in a construction site, leading to harming the workers in a dangerous construction site like the Project, by not having workers' compensation benefits.

121.    The Garner Defendants, jointly and severally, have failed to meet their duty of care which has resulted in serious injuries and total disability to the plaintiff T. Acosta and found that his employer, the subcontractor MRS-7 did not carry workers' compensation insurance to cover their employees, and that the Garner Defendants, as general contractors of the Project, negligently failed to act, to remedy the situation, acting responsibly, and dutifully as the general contractor of the Project where two crews of laborers were rendering

122.    Plaintiff T. Acosta demands compensatory and punitive damages against the Garner Defendants, jointly and severally, for their failure to act with the care that a reasonable general contractor would have exercised under a similar situation or circumstances and additionally requests equitable compensation.

### IX.    GROSS NEGLIGENCE

123.    Plaintiff T. Acosta re-alleges and incorporates by reference herein all the allegations contained in paragraphs 1 to 57 above, and heretofore pleads alternatively under FRCP 8(d), and further states:

124.    The gross negligence exerted by the Garner Defendants is evident under Alabama law, by their continuous lack of care during all the work at the Project, and the blatant disregard for the safety and well-being of the plaintiff T. Acosta, and others there, including the plaintiff M. Acosta, who was also a laborer there.

125.    The Garner Defendants' conduct, jointly and severally, shows a conscious and voluntary disregard for the need to exercise reasonable care which is likely to cause consequential damage or harm to the plaintiff T. Acosta, and other laborers working there with him.

126.    The Garner Defendants' negligence, jointly and severally, is at such level of carelessness, which exceeds ordinary negligence, as their acts and omissions are close to intentional wrongdoing. In fact, the Garner Defendants' conduct, jointly and severally, borders on willful misconduct as by their unlaw acts they have demonstrated a conscious indifference to potential harmful consequences to plaintiff T. Acosta and all the other laborers at the Project.

127.   The extreme carelessness of the Garner Defendants, jointly and severally, is characterized by a marked departure from the standard of care that even a careless person would have been expected to follow.

128.   The Garner Defendants, as general contractors, are considered by law under Alabama Code §25-5-8 **"Statutory employers"** when a subcontractor lacks proper workers' compensation insurance. Thus, the Garner Defendants are legally responsible for providing compensation benefits to the injured employee, T. Acosta, even though they were not directly employing him.

129.   Jointly and severally, the Garner Defendants' actions and/or inactions for not assuring workers' compensation coverage for the construction laborers at the Project demonstrate a conscious disregard for the safety of the plaintiff T. Acosta and other laborers, by so unconsciously neglecting their duty as the general contractors of the Project on their duty of care.

130.   The Garner Defendants, jointly and severally, had a duty of care which they breached in a conscious disregard for the damage that their gross negligence was causing to plaintiff T. Acosta and others similarly situated, including plaintiff M. Acosta on account of their acts and/or omissions.

131.   Plaintiff T. Acosta demands compensatory and punitive damages against the Garner Defendants, jointly and severally, and under equity principles.

## X.    RECKLESNESS

132.    Plaintiff T. Acosta re-alleges and incorporates by reference herein all the allegations contained in paragraphs 1 to 57 above, and heretofore pleads alternatively under FRCP 8(d), and further states:

133.    The Garner Defendants acts of recklessness are evident and their unlawful conduct goes beyond ordinary negligence, as they have shown a conscious disregard for the safety of Plaintiff T. Acosta, and others, by not only knowingly ignoring the fact that their subcontractor MRS-7 Defendants had no workers' compensation insurance to cover the workers of a dangerous job such as roofing construction work, laboring on heights over four times six feet.

134.    The Garner Defendants were aware or should have been aware of the high probability that their actions could lead to harmful consequences, but despite this they consciously choose to proceed recklessly despite that knowledge. The Garner Defendants knew the possibility of the occurrence of a serious accident happening but failed to act.

135.    Even under simple principles of on-the job liability, is evident that the Garner Defendants, jointly and severally, have intentionally, willfully, and in total disregard of the rights of all the laborers at the Project, and certainly the rights of the

injured Plaintiff T. Acosta, have caused harmful present and future consequences derived from their recklessness.

136.   Plaintiff T. Acosta demands compensatory and punitive damages against the Garner Defendants, jointly and severally, and any other compensation allowed by law and/or equity principles.


## XI.   WANTONNESS

137.   Plaintiff T. Acosta re-alleges and incorporates by reference herein all the allegations contained in paragraphs 1 to 57 above, and heretofore pleads alternatively under FRCP 8(d), and further states:

138.   The Garner Defendants, jointly and severally, conducted themselves with conscious or reckless disregard for the safety interests of the plaintiff T. Acosta, and other similarly situated and exposed to a fatal fall or serious injuries, and by their acts and omissions they committed egregious acts of wantonness, as their conduct was carried out with reckless or conscious disregard of the rights of safety of the plaintiff T. Acosta, and other laborers at the Project, including plaintiff M. Acosta.

139.   The Garner Defendants were aware of the unsafe situation of working at 24 feet heights replacing a roof, and having no workers' compensation coverage, but have consciously or deliberately engaged in wanton conduct against plaintiff T.

Acosta, and they have shown a conscious disregard of a substantial and unjustifiable risk to plaintiff T. Acosta and other similarly situated, including plaintiff M. Acosta. These are acts of wantonness, which Alabama law imputes against these Defendants, jointly and severally.

140.   Plaintiff T. Acosta demands compensatory and punitive damages against the Garner Defendants, jointly and severally, and any other compensation allowed by law and/or equity principles, and liquidated damages of double compensation.

## <u>Section C</u>

### <u>PLAINTIFF TIBURCIO ACOSTA CLAIMS AGAINST THE MRS-7 DEFENDANTS AND THE GARNER DEFENDANTS FOR THEIR FAILURE TO PROVIDE WORK SAFETY MEASURES AND FAILURE TO PROVIDE SAFETY FALL PROTECTION, as follows:</u>

### XII.   NEGLIGENT, WILLFUL, WANTON, AND RECKLESS FAILURE TO PROVIDE WORK SAFETY GEAR

141.   Plaintiff T. Acosta re-alleges and incorporates by reference herein all the allegations contained in paragraphs 1 to 57 above, and heretofore alternatively pleads under FRCP 8(d), and further states:

142.   The MRS-7 Defendants and the Garner Defendants, jointly and severally failed to provide any fall safety gear to plaintiff T. Acosta, who was working twenty-five (25) feet high on top of an unguarded ladder, despite having the

control necessary to stop the work upon seeing the dangerous safety situations, failed to correct them.

143.    These safety deficiencies were in plain open view to these Defendants, and they had the control to stop the work and correct the wrongful situation to avoid the foreseeable catastrophic accident suffered by plaintiff T. Acosta on account of the negligent and reckless conduct of all these Defendants.

144.    The Code of Federal Regulations, 29 CFR Sect. 1926.16(c), establishes that both the prime contractor and the subcontractors can have "joint responsibility" for compliance with OSHA standards. These Defendants knew or should have known that safety measures are not only necessary, but mandatory by applicable industry standards and by the OSHA Act, 29 U.S.C. §§651-678, but they ignored the lack of safety's working conditions of plaintiff T. Acosta.

145.    These Defendants knew or should have known that injury or death would likely, and most probably result, and consequently, they are all held accountable on account of their negligence, willfulness, wanton, and recklessness which resulted in T. Acosta breaking his vertebral column, right-hand and left-hand wrists, injuring his urinary track, and the loss of his hearing on account of his fall to the concrete floor.

146.    T. Acosta remains mostly in bed, and he is suffering from severe

mental anguish resulting from these Defendants' wrongful acts and omissions.

147.   Plaintiff T. Acosta demands compensatory and punitive damages and any such further relief allowed by law and/or equity principles.

### XIII.    LIABILITY OF THE GARNER DEFENDANTS AS GENERAL CONTRACTORS' FAILURE ON THEIR DUTY TO ENSURE CONSTRUCTION-JOB-SITE SAFETY FOR ALL WORKERS

148.   Plaintiff T. Acosta re-alleges and incorporates by reference herein all allegations contained in paragraphs 1 to 57 above, and heretofore alternatively pleads under FRCP 8(d), and further states:

149.   The Garner Defendants, as the general contractors of the Project, are held liable for the subcontractor employee's serious on-the job-accident injuries when the general contractor's negligence such as failure to provide a safe site, inadequate supervision, improper training oversight, or any violation of safety regulations, causes the injury.

150.   The liability of the Garner Defendants arises from the contractor's overreaching duty to ensure the work-site safety for all the workers, not just for their own employees, as the law provides remedies as third party negligence claims.

151.   The Garner Defendants allowed unsafe work practices at the Project and failed to enforce proper safety procedures, like securing scaffolding, leading to falls.

46

In addition, the Garner Defendants failed to inspect and maintain site equipment, and did not ensure proper equipment, leading to injuries from faulty or improper equipment, without any fall safety.

152.    The Garner Defendants failed to ensure that the subcontractor MRS-7 and its employees had received proper safety training or proper supervision.

153.    The Garner Defendants failed to comply with the government's safety regulations and with the standards set and enforced by the Occupational Safety and Health Administration ("OSHA") and with the "joint responsibility" of compliance by the general contractor and subcontractor under 29 CFR Sect. 196.16 (c).

154.    The Garner Defendants are also liable for the negligent hiring of the subcontractor MRS-7, with a history of OSHA violations, and all sorts of FLSA's employment violations. The Garner Defendants hired MRS-7 without first ensuring they are qualified or safety conscious.

155.    **Legal duty of care**: The Garner Defendants, as general contractors of the construction Project had the right to control and the legal duty of care with the duty to maintain a safe work environment for all workers on the jobsite.

156.    **Breach of duty**: The Garner Defendants failed to meet their duty by neglecting safety protocols, allowing, or providing faulty or unsafe equipment, or

failing to ensure proper training from the workers.

157.    **Causation**: The Garner Defendants' breach of their duty by neglecting safety protocols, and allowing the use of faulty or unsafe equipment, was the direct cause of the subcontractor's employee, plaintiff T. Acosta.

158.    **Physical Damages suffered**: Plaintiff T. Acosta fell from 25 feet high to a concrete floor from an unsafe and unguarded ladder, breaking the bones of his vertebral column, both right-hand and left-hand wrists, injuring his urinary track and has lost his sense of hearing from the fall.

159.    **Medical Expenses**: The medical and hospital expenses of T. Acosta as resulting from his accident giving rise to this case are over $600,000.00, plus future medical care.

160.    **Lost wages for life**: Plaintiff T. Acosta after the accident giving rise to this case is unable to perform any physical or mental task under any job setting for the rest of his life.

161.    **Mental distress**: Plaintiff T. Acosta has suffered and continues to date suffering from mental distress.

162.    Plaintiff T. Acosta demands compensation for: Medical expenses present and future. Loss of wages and lost capacity to earn. Disfigurement, Physical impairment, Mental anguish, and Pain and suffering.

## XIV.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

163.    Plaintiff T. Acosta re-alleges and incorporates by reference herein all allegations contained in paragraphs 1 to 57 above, and heretofore alternatively pleads under FRCP 8(d), and further states:

164.    Plaintiff T. Acosta hereby claims intentional infliction of emotional distress against the MRS-/ Defendants and the Garner Defendants, jointly and severally. The conduct of these Defendants was extreme and outrageous in nature.

165.    Because of these Defendants' conduct, T. Acosta suffered a catastrophic accident and become disable, and unable to perform any of work he was doing.

166.    Defendants, intentionally inflicted emotional distress upon the Plaintiff T. Acosta, and they knew or should have known that emotional distress would likely occur because of their actions. The emotional distress suffered by Plaintiff on account of the actions and/or inactions of these Defendants is severe in nature.

167.    Plaintiff T. Acosta demands compensatory and punitive damages.

## XV.    LOSS OF THE SPOUSE'S CONSORTIUM AND SERVICES OF PLAINTIFF MARÍA AYALA

168.    Plaintiff M. Ayala re-alleges and incorporates by reference herein all allegations contained in paragraphs 1 to 57 above, and heretofore alternatively pleads under FRCP 8(d) and further states:

169.    Plaintiff M. Ayala is the spouse of the plaintiff T. Acosta for over forty-five (45) years, but after the catastrophic accident T. Acosta endured, he is unable to provide any domestic services around the house or help his wife in any meaningful way, as his vertebral column was damaged in the accident giving rise to the claim, his right and left wrists were broken, he lost his sense of hearing from the fall lacks good mobility and suffers mental anguish and severe depression.

170.    A consortium claim is a separate right of legal action for recovery. *Monroe v. Brown,* 256 F. Supp. 2d 1292 (M.D. Ala. 2003). The law recognizes that one spouse is injured; the other spouse also suffers. *Swartz v. U.S. Steel Corp.*, 439, 304 So. 2d 881 (Ala. 1974).

171.    M. Ayala is entitled to loss of consortium damages. When a husband is seriously injured; the wife's legal claim includes services and sexual relations.

172.    Plaintiff M. Ayala demands compensatory and punitive damages, and any other damages allowed by law and/or equity principles.

        **THEREFORE, PREMISES CONSIDERED**, Plaintiff **T. Acosta** demands from each of the MRS-7 Defendants, and the Garner Defendants, jointly and severally compensatory and punitive damages, litigation costs, and attorney's fees, as stated for each legal claim, supra, plus any other damages allowed by law, and equity principles, or allowed by the Court.

Plaintiff **M. Ayala** demands compensatory and punitive damages against the

MRS-7 Defendants, and the Garner Defendants, jointly and severally.

Respectfully submitted,

**THE PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY IN THIS CASE**


*/s/ Vicenta Bonet Smith*
VICENTA BONET SMITH
Attorney for Plaintiffs
ASB ID #: 5921155V

OF COUNSEL:
**BONET & SMITH, PC**
3499 Independence Drive
Birmingham, AL 35209
Tel:   (205) 870-2222
Fax:   (205) 870-3331
*vicenta@bonetsmith.com*

# SERVICE

PLEASE SERVE THE FOLLOWING DEFENDANTS AS FOLLOWS:

1. **MRS-7 CONSTRUCTION, LLC**
   **4575 County Rd 1212**
   **Vinemont, AL 35179**

2. **HARLIE MOON**
   **4575 County Rd 1212**
   **Vinemont, AL 35179**

3. **JESSICA MOON**
   **4575 County Rd 1212**
   **Vinemont, AL 35179**

4. **GARNER & ASSOCIATES ROOFING & FACILITY SERVICES, LLC**
   **261 Wiggins Street**
   **Rainbow City, AL 35906**

5. **RYAN GARNER**
   **317 Susan Drive**
   **Rainbow City, AL 35906**